UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:17-CR-605 |
| | § | |
| HECTOR GUADALUPE LOZANO | § | |

## ORDER DENYING MOTION TO SUPPRESS

Before the Court is Defendant Hector Guadalupe Lozano's motion to suppress evidence (D.E. 12). Lozano is charged by indictment (D.E. 6) with (1) one count of possessing with intent to distribute more than fifty grams of methamphetamine; and (2) one count of possessing with intent to distribute approximately fifty grams of heroin. For the following reasons, the motion is DENIED.

## FACTS

After the landfall of Hurricane Harvey, widespread power outages led various communities in South Texas to impose curfews restricting travel at night. On the night of August 31, 2017, Investigator Luis Reyes of the Texas Department of Criminal Justice was patrolling the area around Ingleside, Texas, where one such curfew was in place. Officer Reyes normally works in the Houston area but was re-deployed after the hurricane.

At approximately 11:15 p.m., Officer Reyes observed a sports-utility vehicle driving without its headlights, in violation of both Texas law and the local curfew. Officer Reyes pulled the vehicle over and began speaking with the driver, Lozano. Lozano did not have any driver's license or proof of insurance with him, so Officer Reyes

asked Lozano, who was accompanied by a female passenger, to step out of the car and for his name and date of birth. By this point, Officer Reyes had been joined at the scene by Aransas Pass police officers, who ran a computer check using the name and date of birth Lozano had given. The computer check came back clear. Officer Reyes asked Lozano if he would consent to a search of his vehicle, which Lozano declined.

Over the course of the stop, it emerged that Lozano had given Officer Reyes a false name, and that in fact, he had open warrants and several thousand dollars in unpaid fines. Officer Reyes could not recall at the suppression hearing what name Lozano had first given or exactly how the discovery was made. Officer Reyes then arrested Lozano for having given him a false name. *See* Tex. Penal Code Ann. § 38.02.

After Lozano was arrested and seated on the curb, the officers grew concerned for his health, as he was sweating heavily and said that he was diabetic and felt faint. He accepted water and candy from the officers on site. Emergency medical technicians were also summoned to check his medical condition. They concluded that he did not require further treatment.

A canine officer, Deputy Olan Brooks of the San Patricio County Sheriff's office, subsequently arrived at the scene.[1] The dog alerted to the driver's side door, and the ensuing search discovered the fruits Lozano moves to suppress.

---

[1] Officer Reyes's testimony indicated that it took Deputy Brooks approximately 30 minutes to arrive at the scene.

## ANALYSIS

Lozano does not challenge the constitutionality of the initial stop or contend that the stop was unconstitutionally prolonged. Nor does he claim to have been arrested unlawfully. He solely challenges the warrantless search of his car.

It has long been the law in the Fifth Circuit that "a 'dog alert' is sufficient to create probable cause to conduct a warrantless vehicle search." *United States v. Dovali-Avila*, 895 F.2d 206, 207 (5th Cir. 1990); *see also United States v. Rodriguez*, 702 F.3d 206, 210 (5th Cir. 2012) ("'[A]n alert by a drug-detecting dog provides probable cause to search [a vehicle].'" (quoting *United States v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003))). The Court does not perceive anything that distinguishes this case from the many cases upholding warrantless vehicle searches following a positive drug dog alert. Therefore, there is no constitutional injury requiring suppression.[2]

At the suppression hearing, Lozano focused on the reliability of the dog's alert. On direct examination, Deputy Brooks testified that he has been part of the San Patricio County Sheriff's office for approximately six years, and a canine officer for approximately three. His canine partner was certified by Worldwide Canine of Spring Branch, Texas, where Deputy Brooks also received his initial three-week training as a canine officer. Deputy Brooks and his canine partner undergo approximately eight hours per month of additional training, and are required to recertify every year, most recently having recertified in March 2017. Last year, Deputy Brooks and his canine partner

---

[2] In moving to suppress, Lozano relied on *Arizona v. Gant*, 556 U.S. 332 (2009), to argue that the search of his car could not be justified as a search incident to arrest. *See* D.E. 12, pp. 4–5. However, because the search was premised on probable cause as supplied by the dog's alert, and not as a search incident to arrest, *Gant* is inapposite.

placed twentieth out of seventy-seven teams at a law enforcement canine competition in Brownsville, Texas. To the extent that it is necessary to establish a particular dog's reliability in order for its alert to supply probable cause, Deputy Brooks's canine partner's credentials have been well established. *See Florida v. Harris*, 568 U.S. 237, 246–47 (2013) ("If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search."); *Rodriguez*, 702 F.3d at 210 ("'[A] showing of the dog's training and reliability is not required if probable cause is developed on site as a result of a dog sniff of a vehicle.'" (quoting *Sanchez-Pena*, 336 F.3d at 444)).

None of Deputy Brooks's testimony on cross-examination gives the Court any pause. For instance, Deputy Brooks acknowledged that, even though the contraband was hidden in the center console and thus equidistant from the driver's side and passenger's side doors, his dog only alerted to the driver's side door. Deputy Brooks attributed this to the wind.

Similarly, as he was questioned regarding his written log of investigative activity, Deputy Brooks agreed that in many cases after his dog positively alerted, the ensuing search either did not find any drugs or else found a *de minimis* amount of marijuana residue or "shake." Deputy Brooks credibly testified that such alerts were often attributable to residual odors from recently-consumed contraband, and that many suspects admitted to having recently used drugs soon after his canine partner alerted. *See Harris*,

568 U.S. at 245–46 (alert may result from dog's "hav[ing] smelled the residual odor of drugs previously in the vehicle or on the driver's person").

Finally, Deputy Brooks acknowledged that his dog lived with him, was like a part of his family, and was rewarded with a toy for alerting to contraband. None of this undermines his dog's training or the reliability of its alert. *Cf. Florida v. Jardines*, 569 U.S. 1, 12–13 (2013) (Kagan, J., concurring) ("[D]rug-detection dogs are highly trained tools of law enforcement, geared to respond in distinctive ways to specific scents so as to convey clear and reliable information to their human partners . . . . They are to the poodle down the street as high-powered binoculars are to a piece of plain glass." (citation omitted)).

In sum, the Court holds that the positive dog alert supplied sufficient probable cause to search Lozano's vehicle. Thus, the warrantless search was lawful.

## CONCLUSION

For the reasons set forth above, Lozano's motion to suppress (D.E. 12) is DENIED.

ORDERED this 20th day of December, 2017.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE